

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

March 6, 1963

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Opinion No. C- 29

Re: Whether taxpayers may
pay taxes accruing un-
der the Limited Sales,
Excise and Use Tax Act
under protest pursuant
to the provisions of
Article 1.05, Title
122A, 20A, Tax.-Gen.
and Article 7057b,
Title 122, 20, V.A.T.S.,
or must follow the pro-
cedure prescribed in
Article 20.10, Title
122A.

Dear Mr. Calvert:

We quote the following excerpt from your letter re-
questing our opinion on the above captioned subject:

"The Limited Sales, Excise and Use
Tax Act, in Article 20.10, provides the
specific procedures to be followed when
requesting a refund of taxes paid to the
Comptroller under that Act. That Arti-
cle also provides the specific methods
by which a taxpayer may bring action
against the Comptroller for the return
and refund of money paid under the
Limited Sales Tax Act.

"Several taxpayers have paid the
Limited Sales Tax 'under protest' in
accordance with the terms of Article
1.05, Title 122A, and Article 7057b,
Title 122 and have failed to follow
the procedures set out in Article
20.10.

"Does the taxpayer have the right
to pay his Sales Tax liability 'under
protest'? Is the Comptroller justi-
fied in depositing such funds as are
paid 'under protest' in the general

revenue fund without waiting for the
lapse of the statutory ninety days?"

Article 1.05, Title 122A, Ch. 1, 20A, Taxation-General, Vernon's Annotated Texas Statutes, is derived from Acts 1933, 43rd Leg., Ch. 214, p. 637, and Acts 1939, 46th Leg., p. 643. Article 1.05 is, in fact, identical with Article 7057b, Title 122, Ch. 1, 20, V.A.T.S., except that certain sections have been renumbered, a few words omitted, and Section 5 (granting extensions to prior taxpayers), Section 6 (extending the provisions of the act to taxes theretofore paid under protest), Section 7 (providing that the law shall be cumulative of all laws relating to the payment of taxes and fees of undetermined status) and Section 8 (providing a severability clause) have been entirely omitted.

Both of these Articles contain the following provision:

"Any person, firm or corporation who may be required to pay to the head of any department of the State Government any occupation, gross receipt, franchise, license or other privilege tax or fee, and who believes or contends that the same is unlawful and that such public official is not lawfully entitled to demand or collect the same shall, nevertheless, be required to pay such amount as such public official charged with the collection thereof may deem to be due the State, and shall be entitled to accompany such payment with a written protest, setting out fully and in detail each and every ground or reason why it is contended that such demand is unlawful or unauthorized."

Both provide that after such protested payment, the taxpayer has ninety days from the date of such payment to file suit in Travis County against the public official charged with the duty of collecting such taxes or fees, the State Treasurer and the Attorney General. The issues to be determined in such suits are limited to those raised in the written protest. Detailed provisions are made with regard to these suits.

Both Articles require that the taxes be held in a suspense account with the State Treasurer and provide that if suit is not brought within the time and manner provided, or

in the event that it be finally determined in any such suit that the protested payment or any portion thereof, together with the pro rata interest earned thereon, if any, belongs to the State, then the State Treasurer shall transfer such money from the suspense account to the proper fund in the State Treasury.  In the event the taxpayer is successful in his suit, the State Treasurer must then refund the amount of the protested payment, together with the pro rata interest earned thereon, if any.

Article 20.10, as amended Acts 1961, 57th Leg., 1st C.S., Ch. 24, Article I, Sec. 1, p. 71, contains specific provisions with regard to overpayments and refunds of taxes collected under the Limited Sales, Excise and Use Tax Act, commonly known as the Texas Sales Tax Act.

We quote the following excerpt from Article 20.10:

"(A)  Certification of Excess Amount Collected:  Credit and Refund.  If the Comptroller determines that any amount, penalty or interest has been paid more than once or has been erroneously or illegally collected or computed, the Comptroller shall set forth that fact in his records, and the excess amount collected or paid may be credited on any amount then due and payable from the person under this Chapter.  Any balance may be refunded to the person by whom it was paid, or his successors, administrators or executors.

"(B)  Claims for Refund, Credit: Limitation.

"(1) No refund shall be allowed unless a claim therefor is filed with the Comptroller by the person who overpaid the tax or his attorney, assignee, executor, or administrator, within three (3) years from the last day of the month following the close of the quarterly period for which the overpayment was made, or within six (6) months after any determination becomes final under paragraph (A)

through (G) of Article 20.06
or within six (6) months from
the date of overpayment with
respect to such determinations,
whichever of these three (3)
periods expires the later.

"(2) No credit shall be allowed after
the expiration of the period speci-
fied for filing claims for refund
unless a claim for credit is filed
with the Comptroller within such
period, or unless the credit relates
to a period for which a waiver is
given pursuant to paragraph (D)
under Article 20.06.

"(C) Credit or Refund for Use Tax; Reim-
bursement of Retailer for Limited Sales Tax.
No credit or refund of any amount paid pur-
suant to paragraphs (A) through (L) of Arti-
cle 20.03 shall be allowed on the ground that
the storage, use or other consumption of the
tangible personal property is exempted under
Article 20.04 unless the person who paid the
amount reimburses his retailer for the amount
of the limited sales tax imposed upon his
vendor with respect to the sale of the tan-
gible personal property and paid by the ven-
dor to the State.

"(D) Claim for Refund, Credit:  Form:
Contents.  Every claim shall be in writing
and shall state the specific grounds upon
which the claim if founded.

"(E) Effect of Failure to File Claim:
Waiver.  Failure to file a claim within the
time prescribed in paragraph (B) of this
Article constitutes a waiver of any demand
against the State on account of overpayment.

"(F) Notice of Disallowance of Claim:
Service.  Within thirty (30) days after
disallowing any claim in whole or in part,
the Comptroller shall serve notice of his
action on the claimant in the manner pre-
scribed for service of notice of a defi-
ciency determination."

Section (H) provides that no suit or proceeding may be maintained for recovery of any tax allegedly illegally collected unless a claim for a refund has been duly filed. Within ninety days after the mailing of the Comptroller's notice rejecting a claim filed pursuant "to this Chapter", the claimant must bring an action in a court of competent jurisdiction in Travis County, Texas, against the Comptroller on the grounds set forth in the claim, or he will be deemed to have waived his claim. The claimant may also file suit if the Comptroller fails to act on a claim within six months after its filing. The act provides that if judgment is rendered for the plaintiff, it shall be granted as follows:

"(a) If the judgment is for a refund of taxes, it shall be credited on any limited sales or use tax or amount of use tax due from the plaintiff.

"(b) If the judgment is for a refund of use taxes, it shall be credited on any use tax or amount of use tax due from the plaintiff under this Chapter.

"(2) The balance of the judgment shall be refunded to the plaintiff."

Provision is made for payment of interest at the rate of 6% per annum upon amounts found to have been illegally collected from the date of payment to the date of allowance of credit, or to a date preceding the date of the refund warrant but not more than thirty days, the date to be determined by the Comptroller. Further specific provisions are made for the recovery of erroneous refunds.

It is evident that Article 20.10 has created a special method for the taxpayers' recovery of sales taxes, which they deem to have been illegally collected, and that this Article constitutes, in effect, an exception to Articles 7057b and 1.05. We think that this fact is clear evidence of the legislative intent that the specific provisions embodied in Article 20.10 constitute an exclusive remedy and must be followed by taxpayers requesting a refund of taxes paid under the Sales Tax Act.

We pass to a consideration of what action the Comptroller should take with regard to such funds as have been paid under Articles 7057b and 1.05 and are presently being held in the suspense account.

Article 20.13 reads as follows:

"All fees, taxes, interest and penalties imposed, and all amounts of tax required to be paid to the State under this Chapter shall be paid to the Comptroller in the form of remittances payable to the Comptroller of Public Accounts of Texas. The Comptroller shall remit all fees, taxes, interest and penalties collected under this Chapter to the State Treasurer to the deposited in the State Treasury to the credit of the General Revenue Fund. Amended Acts 1961, 57th Leg., 1st C.S., p. 71, ch. 24, Art. I, § 1."

In view of this express provision of the Sales Tax Act, the funds which are being held in the suspense account should be transferred to the General Revenue Fund in the State Treasury.

We pass now to a consideration of the proper disposition of the funds so transferred. Senate Bill No. 1, Chapter 62, p. 203, Acts 57th Leg., First Called Session (1961), being the General Appropriation Bill, contains, at pages 271 and 272, the appropriations for the Comptroller of Public Accounts for the years ending August 31, 1962 and August 31, 1963. The appropriation of Line Items 8 and 9 was made contingent upon the enactment of House Bill 20, 57th Leg., 1st C.S. House Bill 20 provides for the Limited Sales, Excise and Use Tax, for its administration and enforcement, and allocates the revenues derived therefrom. The unexpended balances in Line Items 8 and 9, as of August 31, 1962, are reappropriated for the year beginning September 1, 1962 with the approval of the Governor. Methods of financing Items 8 and 9 are provided. We quote the following excerpt from page 272:

"As much of the respective taxes collected and administered by the Comptroller as may be necessary is hereby appropriated and set aside to pay refunds as provided by law."

Should the Comptroller determine that any of the funds in question have been erroneously or illegally collected, he is authorized under the provisions of Article 20.10 (A) to set forth that fact in his records and credit the excess amount collected on any amount then due and payable from the taxpayer. Any balance may be refunded to the taxpayer, his successors, administrators or executors. The statute thus specifically authorizes refunds in such cases and an appropriation has been made therefor.

As to funds which the Comptroller deems legally collected, he may treat protested payments as a "claim" within the meaning of Section (D) of Article 20.10 if the protests are in writing and state the specific grounds upon which the protests are founded. However, thereafter, the procedural steps provided by Article 20.10 must be followed by the taxpayers and the Comptroller.

## S U M M A R Y

Article 20.10, Title 122A, 20A, Tax.-Gen., V.A.T.S., has provided an exclusive remedy which must be followed by taxpayers seeking to recover sales taxes which they claim have been illegally collected. Such funds as have been paid under protest pursuant to Articles 1.05 and 7057b, V.A.T.S., may be treated by the Comptroller as a "claim" within the provisions of Section (D) of Article 20.10 if the protests are in writing and state the specific grounds upon which the protests are founded. Thereafter, except as to funds which the Comptroller may deem illegally collected and which could be credited or refunded as provided by Article 20.10, the procedural steps provided by Article 20.10 must be followed by both the Comptroller and the taxpayers.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By: *Marietta M. McGregor Payne*
Marietta McGregor Payne
Assistant Attorney General

MMP/jp

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

J. C. Davis
Mary K. Wall
H. Grady Chandler

APPROVED FOR THE ATTORNEY GENERAL
By: Stanton Stone